UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JOHN PUGLISI, JR.,

                       Plaintiff,

                                                           **MEMORANDUM & ORDER**
            v.                                               11-CV-0445 (PKC)

TOWN OF HEMPSTEAD SANITARY DISTRICT
NO. 2, ROBERT NOBLE, MICHAEL
MCDERMOTT, DONALD ZINN, FRANK
ESPOSITTO, and HAROLD VERITY,

                       Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Before the Court is Defendants' motion *in limine* (Dkt. 34) to exclude the testimony of Plaintiff John Puglisi's proposed witness, Dr. Peter Jay Stein. Although the parties have submitted additional briefing regarding other *in limine* issues (*see* Dkts. 43, 50), because the dispute over Dr. Stein's testimony has been fully briefed since April 2013 (*see* Dkts. 35, 36, 37), the Court addresses this issue now and reserves decision on the other *in limine* motions until a later time.

      As set forth below, Defendants' present motion to exclude the testimony of Dr. Stein is granted in part and denied in part. Dr. Stein will be allowed to testify as Puglisi's treating physician but not as an expert witness.

## *BACKGROUND*

      The Court assumes the parties' familiarity with the underlying factual background and procedural history, both of which will be discussed in further detail as necessary herein. Briefly, Puglisi filed suit in 2011 alleging violations of his constitutional and statutory civil rights under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, New York State Executive law § 296, and New York State Labor Law § 215. Dkt. 1 at 1.

Puglisi is a sanitation worker employed by Defendant Town of Hempstead Sanitary District Number Two (the "District"). Puglisi alleges employment discrimination in the form of retaliation against him after his father, John Puglisi, Sr. (also an employee of the District), participated in an investigation into alleged racial discrimination that was occurring at the District. Dkt. 1 at 7–8. Puglisi, Sr. participated in an investigation of alleged discrimination conducted by the New York State Department of Human Rights, which arose from an incident in which an African American District employee discovered a "hangman's noose" in one of the District's garages. Dkt. 1 at 6. Puglisi alleges that, following his father's participation in the investigation, Defendants began discriminating against Puglisi by creating a hostile work environment in which Puglisi endured various negative work-related consequences, resulting in psychological trauma that increased Puglisi's risk of various physical ailments. Dkt. 1 at 8–17, 18.

On January 8, 2013, Judge Joseph Bianco, to whom this action initially was assigned, denied Defendants' motion for summary judgment on all Puglisi's claims with the exception of the claims pursuant to New York State labor Law § 215, which Judge Bianco dismissed. *See* Dkts. 28.[1]

Following Judge Bianco's summary judgment order, Defendants submitted the instant motion *in limine* on April 16, 2013. Dkt. 34. Puglisi responded on April 23 (Dkt. 36), to which

---

[1] Following the Supreme Court's decision this term in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (U.S. 2013), which changed the standard for establishing liability in employment discrimination cases alleging retaliation, Defendants moved the Court to reconsider Judge Bianco's summary judgment order. Dkt. 47. On July 11, 2013, the Court set a briefing schedule for the motion to reconsider.

2

Defendants replied on April 24. Dkt. 37. The Parties submitted a joint pretrial order on April 29. Dkt. 38. On July 1, 2013, the Court held a status conference at which the Court granted an extension of time within which to submit *in limine* motions. *See* July 1, 2013 Minute Entry. The Court ordered that the Parties submit any *in limine* motions on or before July 19, 2013 and promptly thereafter inform the court of a mutually agreeable date for a final pre-trial conference. *See* July 1, 2013 Minute Entry.

## *MOTION IN LIMINE REGARDING DR. STEIN'S TESTIMONY*

In the instant motion, Defendants seek to exclude the testimony of Dr. Stein. Dr. Stein is Puglisi's treating psychiatrist, who diagnosed and treated Puglisi for the psychological trauma arising from the alleged employment discrimination. Defendants seek to exclude Dr. Stein's testimony on the basis that Puglisi did not disclose Dr. Stein as an expert witness until nearly a year after the close of discovery, and because, even if that disclosure were timely, Puglisi has not provided the "summary of the facts and opinions" required by Federal Rule of Civil Procedure 26(a)(2)(C) or a formal expert report under Rule 26(a)(2)(B). *See* Dkt. 34 at 1–2.

In response, Puglisi counters that Dr. Stein was identified as a witness in his capacity as a treating physician in Puglisi's Initial Disclosures, which were submitted on June 24, 2011 (Dkt. 36-1 (Exhibit A)), well before the close of discovery. [2] Puglisi further argues that Dr. Stein has not been retained as an expert for this litigation, that he is permitted under FRCP 26(a)(2)(C) to testify as a "treating physician," and that, as such, he is not required to submit an expert report in advance of testifying. Dkt. 36 at 1–2; Fed. R. Civ. Proc. 26(a)(2)(B). Defendants respond that, even if Dr. Stein is not required to submit a formal report under Rule 26(a)(2)(B), Puglisi nevertheless has failed to provide a summary of his testimony, as required by Rule 26(a)(2)(C),

---

[2] Puglisi also contends it disclosed Dr. Stein as a potential witness in response to interrogatories propounded by Defendants. *See* Dkt. 36 at 1–2.

and that Puglisi's purported "summary" of Dr. Stein's testimony, as contained in two letters authored by Dr. Stein and identified in Puglisi's Initial Disclosures, is insufficient. Dkt. 34 at 2.

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469, U.S. 38, 41 n.4 (1984)) ("Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation omitted). An order on a motion *in limine*, however, "constitutes a preliminary determination in preparation for trial" and is "subject to change as the case unfolds." *Id.* at 139 (quoting *Luce*, 469 U.S. at 41). In other words, although an order on an *in limine* motion may exclude evidence, "no such ruling precludes the Court from reconsidering the exclusion of evidence at trial based on a showing of new circumstances, such as adversary counsel's 'opening the door' through their own arguments or evidence, use of the evidence for impeachment in appropriate circumstances, and numerous other possibilities." *Hill v. Novartis Pharmaceuticals Corp.*, 06-CV-939 (JSR), 2013 WL 1953753, at *1 (E.D. Cal. May 10, 2013).

## DISCUSSION

I. <u>Federal Rules of Civil Procedure and Evidence</u>

Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(A) requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence

4

[("FRE")] 702, 703, or 705."[3]  None of the requirements in FRE 702, 703, or 705 is imposed upon a fact witness who has not been qualified as an expert.  Therefore, witnesses need not be qualified as experts or provide an expert report or summary of testimony under Federal Rule of Civil Procedure 26(a)(2) *unless* they are going to provide testimony pursuant to FRE 702, 703, or 705.

A witness identified as an expert under FRCP 26(a)(2)(B)[4] is required to submit a detailed report containing a complete statement of all opinions the witness will express, any exhibits that will be used to summarize or support those opinions, the witness's qualifications, a list of other cases in which the witness has testified as an expert at trial or by deposition, and a statement of the witness's compensation.  On the other hand, a witness designated as an expert under Rule 26(a)(2)(C)[5] need only submit a statement regarding (i) the subject matter on which the witness is expected to testify and (ii) a summary of the facts and opinions to which the witness is expected to testify.  Fed. R. Civ. Proc. 26(a)(2)(C).

It is well established that "experts are retained for purposes of trial and their opinions are based on knowledge acquired or developed in anticipation of litigation for trial."  *Mangla, M.D.*

---

[3] Federal Rules of Evidence 702, 703, and 705 collectively set forth the method by which, and on what topics, a witness designated as an expert may render opinion testimony.  Rule 702 generally codifies the standard for establishing the reliability of expert testimony as set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Fed. R. Evid. 702.  Rule 703 provides that an expert may base an opinion on "facts or data in the case that the expert has been made aware of or personally observed" even if such facts or data are otherwise inadmissible, so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  Fed. R. Evid. 703.  Rule 705 provides that an expert may be required to disclose on cross examination the underlying facts or data upon which he or she relied in forming an opinion, notwithstanding that the expert did not first testify regarding those facts or data.  Fed. R. Evid. 705.
[4] Expert witnesses covered by Rule 26(a)(2)(B) are those who are "retained or specially employed to provide expert testimony in the case or . . . whose duties as the party's employee regularly involve giving expert testimony."  Fed. R. Civ. P. 26(a)(2)(B).
[5] Rule 26(a)(2)(C) applies to expert witnesses not covered by Rule 26(a)(2)(B).

*v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996). Contrarily, "[a] treating physician's testimony is based on the physicians [sic] personal knowledge of the examination, diagnosis and treatment of a patient and not from information acquired from outside sources." *Id.* (citing *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D. Colo. 1995)). Indeed, "[i]t is well settled that treating physicians can be deposed or called to testify at trial without the requirement of a written report." *Spencer v. Int'l Shoppes, Inc.*, 06-CV-2637(AKT), 2011 WL 4383046, at *2 (E.D.N.Y. Sept. 20, 2011) (citing *Cruz v. Henry Modell & Co., Inc.*, 05-CV-1450(AKT), 2008 WL 905356, at *3 (E.D.N.Y. Mar. 31, 2008)); *see also Reilly v. Revlon, Inc.*, 08-CV-205(CM), 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009) ("Treating physicians do not need to be designated as experts in order to testify."). Treating physicians may be treated as fact witnesses not required to provide an expert report or summary of testimony prior to trial because they "are a species of percipient witness . . . not specially hired to provide expert testimony; rather, they are hired to treat the patient and may testify to and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a written expert report." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 819 (9th Cir. 2011).

II.     Timeliness of Expert Disclosure as to Dr. Stein

Puglisi identified Dr. Stein as a potential witness in his Initial Disclosures pursuant to Rule 26(a)(1) on June 24, 2011. Dkt. 51 at ECF 39–40 (Exhibit B).[6] In the disclosures, Puglisi identified Dr. Stein as "Plaintiff's treating psychiatrist" who "may be called upon [to] testify regarding the facts as set forth in the Complaint of this matter, and the emotion[al] damages caused Plaintiff by Defendants' conduct." Dkt. 51 at ECF 39–40 (Exhibit B). In other words, Puglisi disclosed Dr. Stein as a fact witness at that time but did not disclose Dr. Stein as an expert witness under Rule 26(a)(2).

---

[6] Citations to "ECF" refer to the Electronic Court Filing system's internal page numbering.

In Puglisi's Amended Initial Disclosures, dated April 1, 2013, however, he identified Dr. Stein differently:

> Dr. Stein is Plaintiff's treating psychiatrist pursuant to Fed. R. Civ. Pro. 26(a)(2)(C), and may be called upon to render opinions about treatment, diagnosis, prognosis, causation and permanency within a reasonable degree of medical certainty. Copies of his records and reports have been fully disclosed, and will provide evidence admissible under Fed. R. Evid. 702, 703 or 705.

Dkt. 36-1 at ECF 9–10; Dkt. 44-2 (Exhibit B).

Defendants argue that Puglisi purported to designate Dr. Stein as an expert in the Amended Initial Disclosures dated April 1, 2013, approximately one year after the deadline for producing expert reports had passed, on April 2, 2012. *See* Dkt. 45 at 5; Dkt. 12. Puglisi claims that he properly and timely disclosed Dr. Stein as a testifying expert in his Initial Disclosures, which identify two letters from Dr. Stein, addressed to "Whom It May Concern" and the New York Division of Human Rights, respectively ("Stein letters"). *See* Dkt. 44-4 at 4. Puglisi contends that the disclosure of the Stein letters is sufficient to constitute the disclosure of expert testimony as required by Rule 26(a)(2). Defendants counter that Puglisi's counsel did not claim that the Stein letters constituted a summary of Dr. Stein's testimony under Rule 26(a)(2)(C) or as an expert report under 26(a)(2)(B) until Puglisi's correspondence of April 22, 2013, *i.e.*, a year after the close of discovery. Dkt. 45 at 6.

Defendants are correct. Nowhere in Puglisi's Initial or Amended Initial Disclosures did he identify the Stein letters as an expert report or summary under Rule 26(a)(2). Based on the evidence provided to the Court, it appears that it was not until the April 22, 2013 correspondence that Puglisi offered the Stein letters as a "summary" of Dr. Stein's testimony or as his formal expert report, Dkt. 45 at 6–7. That disclosure, even if sufficient, was untimely. Defendants could not reasonably have been expected to infer from Puglisi's Initial Disclosures, which

7

identified Dr. Stein as Puglisi's treating physician and merely listed the Stein letters as possible evidence, that Puglisi intended to call Dr. Stein as an expert witness or that the Stein letters were intended to serve either as Dr. Stein's expert report or summary under Rule 26(a)(2). Therefore, Puglisi did not timely satisfy his discovery obligations with respect to the expert testimony of Dr. Stein, and his testimony as an expert is precluded on that basis.

III.     Adequacy of Expert Disclosure as to Dr. Stein

Defendants further contend that, even if Puglisi's disclosure of the Stein letters as a summary of Dr. Stein's expert testimony were timely, the letters are substantively insufficient to satisfy Rule 26(a)(2)(C)'s requirements because they do not provide an adequate "summary of the facts and opinions to which the witness is expected to testify." Dkt. 45 at 6–7; Fed. R. Civ. Proc. 26(a)(2)(C)(ii). Defendants cite *Ziegenfus v. John Veriha Trucking*, 10-CV-5946(RJS), 2012 WL 1075841 (S.D.N.Y. Mar. 28, 2013), which involved similar circumstances to this case. In *Ziegenfus*, the plaintiff contended she disclosed to the defense the existence of her treating physician in her initial disclosures and that she intended to offer his expert testimony under Rule 26. *Ziegenfus,* 2012 WL 1075841, at *7. The plaintiff identified a letter authored by her treating physician setting forth the results of several medical tests and the physician's subsequent diagnosis of the plaintiff. *Id.* at *1. Nowhere in the letter or elsewhere was it indicated that the letter was intended to serve as the physician's expert report or summary. *Id.* at *6–*7. Additionally, in response to a defense interrogatory, the plaintiff stated that the physician might testify, but did not identify the physician as an *expert* witness. *Id.* at *7. The district court concluded that "neither the interrogatory response nor the [To Whom It May Concern] letter satisfied Plaintiff's obligations under Rule 26(a) or put Defendants on notice that [the doctor] might offer *expert* testimony on a motion or at trial." *Id.* The judge rejected the plaintiff's

8

argument that the physician "was not required to file an expert report because he was Plaintiff's treating physician." *Id.* at *7. The judge further held that, even if the physician was not required to submit a full report under Rule 26(a)(2)(B), the plaintiff was required at the very least to provide the defendants with a summary of the doctor's opinions about plaintiff's medical condition pursuant to Rule 26(a)(2)(C), and that neither the interrogatory response nor the "To Whom It May Concern" letter identified by the plaintiff was sufficient to satisfy Rule 26(a)(2)(C). *Id.*

Here, as in *Ziegenfus*, Puglisi has failed either to provide an expert report for Dr. Stein or a summary of his anticipated testimony. The Stein letters, which contain no more than 5 paragraphs each, plainly do not contain "all opinions the witness will express and the basis and reasons for them" as required by Rule 26(a)(2)(B). The Stein letters likewise fail to provide a summary of Dr. Stein's testimony as required by 26(a)(2)(C). Rule 26(a)(2)(C) requires either a statement regarding "(i) the subject matter on which the witness is expected to present evidence under [FRE] 702, 703, or 705; or (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. Proc. 26(a)(2)(C). The Stein letters patently fail to do either and are, therefore, insufficient to satisfy the requirements of Rule 26(a).

Accordingly, the inadequacy of the purported expert disclosures regarding Dr. Stein also precludes his testimony as an expert witness.

IV. Treating Physician as Fact Witness

Defendants seek to preclude Dr. Stein's testimony *in toto*, both as an expert and a fact witness. Dkts. 34, 37, 45. However, as discussed above, Puglisi timely disclosed Dr. Stein as a non-expert witness in his Initial Disclosures, in which Puglisi stated that "Dr. Stein is Plaintiff's *treating psychiatrist*, and may be called upon [to] testify regarding the *facts* as set forth in the

9

Complaint of this matter, and the emotion[al] damages caused Plaintiff by Defendants' conduct."
Dkt. 44-4 at 4 (emphases added). Defendants concede as much. Dkt. 45 at 6 n.2.

No expert report or summary of testimony is required for Dr. Stein to testify as a *fact* witness under Federal Rule of Evidence 701. Because Puglisi timely disclosed Dr. Stein as his treating physician, *i.e.*, a fact witness, Dr. Stein may testify as to facts acquired *and* opinions formed during his "personal consultation" with Puglisi. *DeRienzo v. Metropolitan Transit Authority and Metro-North R.R.*, No. 01-CV-8138(CBM), 2004 WL 67479, at *2 (S.D.N.Y. Jan. 14, 2004). This is because "if the witness testifies only to the opinions formed in providing plaintiff medical care, such opinions are considered an explanation of treatment [] and the physician may properly be characterized as a fact witness." *Turner v. Delta Airlines*, 06-CV-1010(CLP), 2008 WL 222559, at *1 (E.D.N.Y. Jan. 25, 2008) (citing *Hodge v. City of Long Beach*, 02-CV-5851(AKT), 2006 WL 1211725, at *4 (E.D.N.Y. May 4, 2006)); *see also Motta v. First Unum Life Ins. Co.*, 09-CV-3674(JS), 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011) ("The doctor will, however, be permitted to testify about his evaluation and treatment of plaintiff, and may express his opinions about the plaintiff's condition and prognosis based upon his observations while treating plaintiff") (citing *Monroe-Trice v. Unum Emp. Short-Term Disability Plan*, 00-CV-6238(JGK), 2003 WL 68033 (S.D.N.Y. Jan. 8, 2003)).

Dr. Stein's testimony will be limited to facts learned and opinions formed in his role as Puglisi's treating physician. "[T]he key to what a treating physician can testify to without being declared an expert is based on *his/her* personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from information acquired from outside sources.'" *Spencer*, 2011 WL 4383046, at *3 (citing *Mangla*, 168 F.R.D. at 139); *see also Smolowitz v. Sherwin-Williams Co.*, 02-CV-5940(CBA), 2008 WL 4862981, at *4 (E.D.N.Y. Nov. 10, 2008) (non-expert

treating physician testimony "must be based on information that he has acquired in his role as a treating physician").

Puglisi argues that, solely because of Dr. Stein's status as a physician, he is free to testify under Rule 702 without being qualified as an expert. But, as a treating physician who has not submitted a full report under Rule 26(a)(2)(B), nor a summary of testimony under Rule 26(a)(2)(C), Dr. Stein only "may testify as to opinions formed during [his treatment of plaintiff], including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." *Williams v. Regus Mgmt. Grp., LLC*, 10-CV-8987(JMF), 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012). Dr. Stein may not testify as to facts acquired or opinions formed outside of the treating physician role, including but not limited to information acquired during preparations for his testimony at trial.

Importantly, Puglisi effectively concedes that Dr. Stein may not testify as an expert under Rule 26. *See* Dkt. 50 at 5 ("Dr. Stein has not been retained to testify in an expert capacity in this matter."). And although Puglisi concedes there are some limits to the topics on which Dr. Stein may testify, Puglisi fails to acknowledge the full breadth of those restrictions. *See* Dkt. 50 at 6. Indeed, the primary case to which Puglisi cites, *Robinson v. Suffolk County Police Dep't*, 08-CV-1874(AKT), 2011 WL 4916709 (E.D.N.Y. Oct. 17, 2011), illustrates the point that Dr. Stein's testimony must be limited appropriately. In *Robinson*, the judge precluded the plaintiff's treating physician from testifying as an expert under Rule 26. The judge first found that the plaintiff's treating physician had not been properly noticed under Rule 26, and had failed to provide an adequate expert report or summary of testimony. *Id.* at *3–*4. The judge then held that:

> "[i]f [the treating physician] is to provide testimony in his own right with regard to causation, his testimony must nonetheless be limited to and based upon information that he has acquired in his role as a treating physician. As one court has noted, '[a] doctor's opinions on the issue of causation are relevant, indeed,

11

> necessary, to the treatment of the patient and therefore constitute an explanation of treatment.' Accordingly, [the treating physician] may testify as a treating physician and will be permitted to offer opinion testimony on diagnosis, treatment, prognosis, and causation, *but solely as to the information he has acquired through observation of the [p]laintiff in his role as a treating physician limited to facts in [p]laintiff's course of treatment.*"

*Id.* at *6 (emphasis added) (internal citations omitted). That is precisely the case here, where Puglisi seeks to offer the testimony of his physician with respect to the causation of his alleged injuries.

Accordingly, Dr. Stein may offer opinion testimony on diagnosis, treatment, prognosis, and causation with respect to Puglisi's condition. Dr. Stein also may testify as to Puglisi's damages, but only to the extent Dr. Stein's opinion is based upon information that was acquired as part of his treatment of Puglisi, and not through this litigation. *See id.* at *5 ("the key to what a treating physician can testify to without being declared an expert is based on *his* personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from information acquired from outside sources'").

Lastly, Defendants are not unfairly prejudiced by the admission of Dr. Stein's fact testimony. Defendants had notice that Dr. Stein might provide this testimony as of Puglisi's Initial Disclosures. Defendants had the opportunity to depose Dr. Stein during discovery. As with any other fact witness, Defendants do not require Dr. Stein's expert report under Rule 26(a)(2)(B) or a summary of his testimony under Rule 26(a)(2)(C) in order to sufficiently cross examine him. Indeed, Defendants have obtained Puglisi's medical records relating to his treatment by Dr. Stein through discovery. *See* Dkt. 50 at 4 ("copies of Dr. Stein's records with a diagnosis of Plaintiff's medical condition, and the causal relation between Plaintiff's medical condition and Defendants' retaliatory action against Plaintiff were provided to Defendants on August 17, 2011").

*CONCLUSION*

For the reasons set forth above, Defendants' motion *in limine* is GRANTED in part and DENIED in part. Dr. Stein is precluded from providing testimony admissible only under Federal Rules of Evidence 702, 703 or 705 insofar as such testimony is based upon information Dr. Stein obtained through this litigation as opposed to his treatment of Puglisi. Dr. Stein may testify, however, as a fact witness in his capacity as a treating physician. As part of that testimony, Dr. Stein may testify as to his medical opinions formed as part of his diagnosis and treatment of Puglisi.

SO ORDERED:

/s/
PAMELA K. CHEN
United States District Judge

Dated: August 8, 2013
       Brooklyn, New York